JAMES VASSER v. J. A. BUXTON & CO.

*Contract—Conditional Sale.*

Plaintiff sold a horse to one upon an agreement " that it should be the plaintiff's property until the residue of the purchase money was paid, and subject to a lien therefor ;" *Held* to be a conditional sale. (As to the nature of the transaction and the submission of the testimony to the jury, see *Shaw* v. *Burney, ante* 331.)

(*Clayton* v. *Hester*, 80 N. C., 275, cited and approved.)

CIVIL ACTION, tried at January Special Term, 1882, of NORTHAMPTON Superior Court, before *Graves, J.*

The plaintiff sues to recover the possession of a bay mare, and the sole controversy was as to his title. On the trial the evidence was as follows :

The plaintiff, examined on his own behalf, testified that one Samuel Story, residing on a farm of his in Virginia, applied to the plaintiff to buy him a horse. The plaintiff consented to do so if the defendant would go to Petersburg after it, stating that he had money there in the hands of

one Jarrett which he could thus use. Accordingly the plaintiff wrote to Jarrett to purchase for himself two horses, which was done, and Story went to Petersburg and brought them out. The bay mare, the property in dispute, worth $130, remained a few days in possession of Story after his return home, when, in company with his brother, he carried her over to the plaintiff's house. There, a settlement was had, and Story gave to the plaintiff his note for $70, the price of the mare, reduced to that sum by deducting a debt due from the plaintiff, and it was agreed she should be the plaintiff's property until the residue of the purchase money was paid and be subject to a lien therefor. Story kept the mare for a year, when the plaintiff, losing one of his gin-horses, sent an inferior horse to Story in exchange for the mare, saying to Story that if the mare worked well in the gin he would credit the note with $30, the difference in their values. The trade was not final. The mare did not work well and the plaintiff retained her until, hearing that a constable had orders to seize her, he returned the mare to Story and took back the horse that had been sent. No credit was endorsed on the note.

George Story, the brother who was present at the transaction, testified that he wrote the note for $70; that it was the understanding of the parties that the mare was to be responsible until she was paid for, and that underneath the signature to the note was a written memorandum to this effect, entered at the same time. Upon this evidence the defendants contended:

1. That no agreement was shown that the property should be in the plaintiff before the delivery to Story.

2. Nor Story's assent to the memorandum put upon his note, and

3. If the contract was made for the retention of title, it was superseded and annulled by the subsequent act of exchange, and the absolute property thereby vested in Story.

In support of these propositions the defendants asked the court to give the following instructions :

1. If the jury are satisfied that the plaintiff agreed to buy the mare for Story, or to sell her to him, and she was deliv-ered to Story, or he permitted to take possession, and that afterwards the parties agreed to let the mare stand respon-sible for the purchase money, the plaintiff could not recover.

2. If Story was allowed to take possession before the writ-ten memorandum of agreement was executed, the title ·passed from the plaintiff and he could not maintain the ac-tion.

The court charged the jury " that in order to find how the matter is, it is necessary for them to ascertain what was the contract entered into between the parties; that a person may contract to sell and reserve in himself the title to the thing sold, until full payment of the purchase money ; but that he cannot sell and deliver the thing, whereby the prop-erty will pass to and vest in the vendee, and then take a re-·conveyance to hold as a security, as this would constitute a mortgage and be void. An agreement between parties is what both assent to. It is for you to find whether the plain-tiff at the time of sale, and as part of its terms, reserved the title, with Story's assent, until the price was paid. So you will consider the evidence and find how the matter is. If the sale and delivery were without such reservation, the plaintiff cannot recover. But if the agreement embraced the retention of the property in the mare, he would be enti-tled to a verdict, unless the property was divested by what took place afterwards. If there was a swap or exchange— the horse and $30 being the price paid for the mare—and this was a completed or final transaction, the plaintiff must-fail in his action, and it was for the jury, upon all the evi-dence, to say how the fact is, and whether the exchange was-or was not consummated and final.

22

The jury found the issue for the plaintiff, and from the judgment rendered thereon the defendants appeal.

*Messrs. S. J. Wright* and *Day & Zollicoffer*, for plaintiff.
*Messrs. R. B. Peebles* and *Willis Bagley*, for defendants.

SMITH, C. J., after stating the facts. It is manifest the purchase of the two horses in Petersburg and the payment therefor with the plaintiff's money, was intended to be, and was on behalf of the plaintiff, and the delivery to Story, as his bailee, for the purpose of conveying them thence to the plaintiff. It no more put the title to the mare than the title to the horse in the agent, Story. The sale and its terms were concluded subsequently at the plaintiff's house, and the terms were that the property should remain where it already was, in the plaintiff, until the price secured in the note was paid. The testimony is explicit on this point, and the agreement to avoid all misunderstanding of its terms is embodied in the memorandum, then entered upon the foot of the note. The selling is the act of the plaintiff, and conditional upon the payment of the price; the note is the contract of Story to pay the residue of the purchase money. These constitute and give character to the entire transaction. Its validity is not open to controversy in view of the repeated adjudications of this court, sustaining such conditional sales. *Clayton* v. *Hester*, 80 N. C., 275.

2. The exchange and delivery of the mare, it is insisted, detached the condition and gave to Story the absolute title.

The real character of this transaction and the intent of the parties are left somewhat obscure and uncertain upon the testimony. The note seems not to have been credited with the difference in value between the exchanged animals. The plaintiff admits the mare did work well in the gin, but he says "the trade was not final," nor does it appear except inferentially that Story assented to the terms pro-

posed. The court therefore was correct in leaving to the jury to inquire and find from the evidence what were the facts of the transaction, and the intent of the parties to it, with appropriate instructions for their guidance in making up their verdict.

The subject is considered in *Shaw* v. *Burney, ante,* 331, and further comment is needless.

There is no error, and the judgment must be affirmed.

No error.                                        Affirmed.